IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLADES PHARMACEUTICALS,
LLC,

    Plaintiff,

      v.

BRENDAN J. MURPHY, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-3817-TWT

OPINION AND ORDER

This is an action for copyright infringement, breach of fiduciary duty, conversion, and unjust enrichment. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 37]. For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The Plaintiff, Glades Pharmaceuticals, LLC ("Glades"), is a limited liability company that develops, markets, and distributes non-branded, or generic, versions of dermatological products. Glades is a wholly-owned subsidiary of Stiefel Laboratories, Inc. ("Stiefel"), a privately held corporation incorporated in the state of New York and headquartered in Florida. Stiefel maintains direct control over all aspects of Glades's

business operations, as well as direct and indirect supervision and control over Glades's officers and employees.  Defendant Brendan J. Murphy, a Georgia resident, served as the President of Glades from 1991 until 2002.  He served as Glades's Vice President of Business Development and Outsourcing from January 2003 until approximately May 2, 2003.  Murphy also served as Stiefel's Vice President of Sales from June 2001 until approximately October 23, 2002.

As a senior executive officer and employee, Murphy was responsible for exploring, developing, and pursuing business opportunities for Glades, including securing the right to market and distribute non-branded dermatological products.  In early 2003, while still employed as Vice President for Glades, Murphy allegedly entered into discussions with Janssen Pharmaceuticals, Inc. ("Janssen"), a subsidiary of Johnson & Johnson, Inc., regarding the distribution of a non-branded version of a Nizoral shampoo currently being sold by Janssen.  Murphy allegedly pursued the opportunity himself while actively concealing the opportunity and his activities from Glades.  Glades further alleges that Murphy, while still employed by Glades, discussed joining forces with Bi-Coastal Pharmaceutical Corporation ("Bi-Coastal") and Pharm Force to market and distribute the generic Nizoral shampoo. In 2003, Murphy founded Defendant River's Edge Pharmaceuticals, LLC ("River's Edge"), a limited liability company engaged in the business of developing, marketing and

distributing non-branded dermatological products.  In addition to the Nizoral shampoo, the Plaintiff alleges that Murphy also diverted opportunities to market and distribute other products.

Glades maintains that, in order to pursue the generic Nizoral shampoo and other opportunities, Murphy misappropriated a PowerPoint presentation and converted other confidential product information belonging to Glades.  For instance, on behalf of himself and River's Edge, Murphy allegedly sent the presentation to Bi-Coastal and Pharm Force to be used as part of a proposal to Janssen in an effort to obtain the generic Nizoral shampoo deal.  According to Glades, the presentation was independently created by Glades to assist in soliciting business opportunities.  Glades asserts that its PowerPoint presentation is unique in format, design, and manner of presentation and contains market and sales data compiled by Glades.  On February 13, 2004, Glades obtained a certificate of registration for the Power Point presentation from the Copyright Office of the United States.

On August 22, 2003, Murphy and River's Edge filed suit against Glades and Stiefel in Gwinnett County, Georgia, seeking a declaratory judgment regarding the validity of employment agreements entered into by Murphy with Glades and Stiefel. Glades removed the case to this Court.  District Judge Carnes found that removal was improper because Glades had not shown the existence of diversity jurisdiction.  Judge

Carnes remanded the case to the Gwinnett County Superior Court, where it remains pending.

Glades filed this action against Murphy and Rivers Edge on December 30, 2004, asserting claims for copyright infringement with respect to the presentation, breach of fiduciary duty, conversion, and unjust enrichment.  The Defendants now move for summary judgment on all of the Plaintiff's claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

A. <u>Copyright Infringement</u>

The Defendants assert that they are entitled to summary judgment on the Plaintiff's claim of copyright infringement of the Power Point presentation. According to the Plaintiff, it was "an original, independently created presentation designed solely by Glades to assist it in the solicitation of business on its behalf from various companies." (Compl. ¶ 21.)  The presentation also contained a unique and original format and design and "an independently created manner of presenting Glade's history, its particular strengths and its business strategies and operations." (<u>Id.</u>)  In order to make a prima facie showing of copyright infringement, the Plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1288 (11th Cir. 1999) (<u>quoting</u> <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)).  As to the first element, a copyright registration certificate provides "prima facie proof of the existence of a valid copyright."  17 U.S.C. § 410(c);  <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1541 (11th Cir. 1996).  "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid."  <u>Bateman</u>, 79 F.3d at 1541 (citations omitted). This requires some showing that "the portion of the copyrighted work actually taken is unworthy of copyright protection." <u>Id.</u>

Here, the Defendants argue that the copyright is invalid because the Plaintiff failed to register the presentation as a compilation or derivative work.  Under the Copyright Act, "a 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.  "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted."  Id.

As an initial matter, this Court holds that the presentation could not qualify as a derivative work.  "The reference to 'preexisting works' in the definition ['derivative work'], as compared with the reference to 'preexisting materials' in the definition of a 'compilation' implies that a derivative work, unlike a compilation, must incorporate that which itself is the subject of copyright."  Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1079 (9th Cir. 2000) (emphasis added); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 3.01, at 3-5 (2005).  Here, the Defendants claim that if the data contained within the presentation was "recast, transformed, or adapted" by the Plaintiff, it would make the presentation a derivative work.  (Defs.' Mot. for Summ. J., at 4.)  This is incorrect.  The data could not itself be subject to

copyright because "facts are not copyrightable." Feist Publ'ns, Inc., 499 U.S. at 344. Moreover, no part of the presentation was previously copyrighted or even shown to be a work subject to copyright protection. Thus, the presentation cannot be classified as a derivative work.

Furthermore, even if it is assumed that the presentation was a compilation rather than an original work, the Plaintiff's failure to register the work as a compilation is not fatal to the copyright's validity. Inadvertent omissions and mistakes do not rebut the presumption of a registration certificate's validity. Milliken & Co. v. Shaw Indus., Inc., 978 F. Supp. 1155, 1159 (N.D. Ga. 1997) (citing Data Gen. Corp. v. Grumman Sys. Support, 36 F.3d 1147, 1161-62 (1st Cir. 1994)). "An error in the application should be immaterial if discovery of the error would not have led the Copyright Office to refuse the application." Id. Here, the registration certificate provided prima facie evidence of the copyright's validity. The Defendants, moreover, have offered no evidence to show that the Copyright Office would likely have rejected the Plaintiff's application had it known that the presentation was a compilation. Thus, the Plaintiff's claim satisfies the first prong of the copyright infringement analysis.

Under the second prong, the Plaintiff normally must first establish through either direct or circumstantial evidence that the Defendants actually copied the work. See Bateman, 79 F.3d at 1541. Here, the Defendants concede that they copied the

presentation, thus meeting the initial inquiry.  The Plaintiff must then respond to any evidence presented by the Defendants that the work does not satisfy the constitutional requirement of originality.  Id.; see also Feist Publ'ns, Inc., 499 U.S. at 345 ("the sine qua non of copyright is originality").   This originality requirement, however, is extremely low.  "Original" means only that "the work was independently created by the author" and "possesses at least some minimal degree of creativity."  Feist Publ'ns, Inc., 499 U.S. at 345.

The Defendants contend that the presentation is not subject to copyright protection because, where there are only a few ways of expressing an idea, the Plaintiff cannot gain exclusive right to that idea by copyrighting a particular phrase. See Warren Pub., Inc. v. Microdos Data Corp., 115 F.3d 1509, 1519 n.27 (11th Cir. 1997) (concluding that expression is not protected "where protection of the expression would effectively accord protection to the idea itself").  The Defendants argue that there is nothing original about a sales presentation promoting "cooperation between a producer of generic drugs and the manufacturer of a name-brand product whose patent is soon to expire."  (Defs.' Mot. for Summ. J., at 9.)  They claim that after changing the identity of the product, the manufacturer, and the proposed marketing partner, "all that is left in common is the uncopyrightable basic idea."  (Id. at 10.)  For example, they point to the Plaintiff's choice of the phrase "make decisions based on

profit retention, not unit retention," as an example of an idea over which the Plaintiff has claimed control through copyright.  (Id.)

The Court is unpersuaded, however, by the Defendants' attempts to parse the presentation into a series of supposedly uncopyrightable facts and ideas.  See Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1109 (9th Cir. 1970) ("[P]roper analysis of the problem requires that all elements of each card, including text, arrangement of text, art work, and association between art work and text, be considered as a whole").  The Supreme Court has made clear that "[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."  Feist Publ'ns, Inc., 499 U.S. at 349 (emphasis added).  Even if it is assumed that the presentation is nothing more than a compilation of uncopyrightable material, the Plaintiff still has a copyright in its selection and arrangement.  Although the Defendants can copy the underlying facts used in the Plaintiff's presentation, they cannot copy the exact words used to present them.  Id.

An opinion by the First Circuit Court of Appeals proves instructive on this point.  In CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504 (1st Cir. 1996), the creator of a radio promotional contest filed claims against a radio station

for airing a similar contest. Among the claims was an allegation of copyright infringement for creating a mailing brochure with "striking similarities" to the plaintiff's. <u>Id.</u> at 1515. The district court compared the two brochures, looking at typestyles, colors, layout, and text, and found a triable issue of copyright infringement. The First Circuit subsequently approved the district court's analysis, holding that the lower court had "kept sight of the brochure as a whole" and allowed the "infringement question to go to the jury, despite concluding that most -- if not all of the text -- consisted of uncopyrightable elements." <u>Id.</u> This Court similarly finds here that even though certain facts and ideas contained within this presentation were not subject to copyright protection, a triable issue exists as to whether the presentation as a whole held such protection. Summary judgment is, therefore, inappropriate.

B. <u>Breach of Fiduciary Duty</u>

The Defendants move for summary judgment on the Plaintiff's claim that by competing against the Plaintiff, Murphy breached his fiduciary duty and duty of loyalty. The Plaintiff has alleged that Murphy, as an officer and employee, abused his position of trust and authority by usurping business opportunities from his employer and misappropriating its property for his own personal financial gain. (Compl. ¶¶ 48-50.)

Murphy argues that he did not owe a duty of loyalty as an employee of the Plaintiff.  However, Georgia law has continually implied "a duty of loyalty, faithful service and regard for an employer's interest."  Wilson v. Wilson, 277 Ga. 801, 805 (2004).  In Lane Co. v. Taylor, 174 Ga. App. 356, 362 (1985), an apartment management company sued a former employee who had left the plaintiff and taken three of the plaintiff's clients with her to a new company.  Among its claims, the plaintiff alleged that the defendant had breached her duty of good faith and loyalty to the company.  The defendant moved for summary judgment on the duty of loyalty claim, which the trial court granted.  In reviewing the lower court's decision, the Georgia Court of Appeals examined the following facts: (1) the plaintiff's former customers had terminated their contracts and moved to the defendant's new company, where they were assigned to her; (2) the defendant and the officers of her new company conducted meetings prior to this happening; and (3) the defendant used the plaintiff's forms, documents and management techniques for her new employer.  Id. at 361.  After examining both the master-servant and principal-agent relationships, the Court of Appeals held that "even if defendant be classified as a servant, there still remains the duty of loyalty, faithful service and regard for the employer's interests."  Id. at 362.  Thus, even though "uncontroverted evidence" showed the defendant had not contacted the plaintiff's former customers in an attempt to "pirate them away from

the plaintiff," the court still reversed the lower court's grant of summary judgment for the defendant.  Id. at 358.

Similarly here, the Court finds that a triable issue exists as to whether Murphy violated his duty of loyalty.  The Plaintiff has presented evidence that Murphy pursued opportunities in the generic drug market for his own benefit while employed by the Plaintiff and to the detriment of the Plaintiff. The Plaintiff has also offered evidence that Murphy appropriated the presentation and market and sales information contained within it.  Thus, triable issues of fact remain, leaving the matter within proper purview of a jury.

The Plaintiff also claims that Murphy's actions violated his fiduciary duty to the Plaintiff.  Under O.C.G.A. § 23-2-58, "[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."  A fiduciary relationship will not generally be implied between an employer and employee, but "the facts of a particular case may establish the existence of a confidential relationship between [them] concerning a particular transaction, thereby placing upon the parties the fiduciary obligations

associated with a principal-agent relationship." <u>Atlanta Mkt. Ctr. Mgmt., Co. v. McLane</u>, 269 Ga. 604, 607 (1998).  The trial court should decide the issue of a confidential relationship as a matter of law only where the facts are "patent, unambiguous, and undisputed." <u>Middleton v. Troy Young Realty, Inc.</u>, 257 Ga. App. 771, 773 (2002).  "[T]he existence of a confidential relationship depends upon the circumstances and therefore is generally a jury issue." <u>Id.</u>

This Court is guided by the Georgia Supreme Court's discussion of this issue in <u>McLane</u>, 269 Ga. at 604.  There, a leasing director sued her former employer for failing to pay her a promised future commission.  The Georgia Court of Appeals found that the employer had violated its fiduciary duty.  In reviewing the record, the Georgia Supreme Court assumed that the lower court had grounded its decision on the employer's usurpation of a business opportunity assigned to the plaintiff and its assurances to the plaintiff that it would pursue a commission on her behalf and pay her a portion of any proceeds. <u>Id.</u> at 607.  Although the high court reversed, it did so because the plaintiff's claim was based on the defendant's post-employment assurance, which the court held could not "retroactively cause the employer-employee relationship to evolve into a fiduciary relationship between the parties." <u>Id.</u> at 607-608.  Here, by contrast, the Plaintiff has presented facts demonstrating the existence of a fiduciary relationship between the Plaintiff and Murphy during his employment.

The Plaintiff has shown that Murphy had full access to the Plaintiff's highly confidential information and was "given authority over one of Glades' most critical and highly sensitive functions -- the development and pursuit of opportunities for Glades to manufacture and sell new pharmaceutical products." (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 14.) Given this evidence, the Court cannot conclude as a matter of law that no fiduciary relationship existed.

The Defendants make several attempts to refute this fiduciary duty claim. They first assert that the Nizoral opportunity had been abandoned by the Plaintiff, as evidenced by its appearance on the "Inactive or Abandoned" projects list in the Plaintiff's March 2003 New Product Committee Minutes. (Defs.' Mot. for Summ. J., at 11.) A claim for usurpation of a corporate opportunity or equivalent breach of fiduciary duty cannot be maintained absent a showing of the existence of a corporate beachhead placing the opportunity within reach. Southeast Consultants, Inc. v. McCrary Engineering Corp., 246 Ga. 503, 508 (1980). The Court finds, and the Plaintiff does not appear to dispute, that this opportunity had been abandoned by the Plaintiff. However, the Plaintiff also makes allegations regarding five other opportunities diverted by Murphy, including a sodium sulfacetamide product, a Lidocaine product, an ammonium lactate product, a Hyrdroquinone 4% product, and a Nizoral generic product. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 15.) The

Plaintiff provides extensive evidence detailing how Murphy used his position to obtain information regarding the production of these generic products and even began producing one of them while still employed by the Plaintiff. (Charles Stiefel Aff. ¶ 17.)  The Plaintiff also offers evidence that Murphy steered away another generic product deal with Bristol Myers Squibb so that he could pursue it on behalf of the Defendants.  (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 15-16.)  Based on this evidence, the Court holds that triable issues exist as to whether Murphy violated his fiduciary duty to the Plaintiff by pursuing these business opportunities on behalf of the Defendants.

Murphy next makes a series of arguments aimed at rebutting the possibility that he could legally have owed any fiduciary duty to the Plaintiff.  He cites to evidence that: (1) the terms of the Plaintiff's operating agreement contractually limited his responsibilities; (2) he had been demoted and had no power to bind the company to contracts; (3) the Plaintiff's president, Charles Stiefel, no longer trusted him; and (4) other contracts between him and the Plaintiff were allegedly unenforceable.[1]  The Court finds these arguments unpersuasive.  As previously stated, Georgia law does not

---

[1]Murphy had signed a Confidential Disclosure Agreement in 1997 as part of his employment with the Plaintiff.  Then, in 2003, after he was no longer employed by the Plaintiff, he entered into a Consulting Agreement with Stiefel.  These contracts are the subject of another lawsuit pending before a Georgia state court.

require a contract in order to establish fiduciary obligations; it will look at the factual circumstances in order to determine whether a confidential relationship existed. McLane, 269 Ga. at 607.  Fiduciary obligations will arise from any relationship that is deemed confidential under O.C.G.A. § 23-2-58.  The Georgia Supreme Court has emphasized that "[t]he relationships listed as examples in the statute are not exclusive."  Cochran v. Murrah, 235 Ga. 304, 306 (1975).  Given the evidence that Murphy pursued competitive activities for his personal benefit during his tenure as the Plaintiff's Vice President, none of these arguments by the Defendants eliminate the triable issues of fact on this claim.

Murphy also cites to a provision in the Plaintiff's operating agreement expressly allowing its officers to participate in ventures competitive with the Plaintiff. (Defs.' Mot. for Summ. J., at 13-14).  The Plaintiff has presented evidence, however, that the purpose of this provision was to allow other entities that were managers or members of Glades LLC to also pursue their own pharmaceutical businesses.  (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 20).  Thus, viewed in the light most favorable to the Plaintiff, this evidence also fails to eliminate the triable issue of whether a fiduciary duty existed.

Finally, Murphy asserts that he did not violate his fiduciary duty by forming River's Edge while still employed by the Plaintiff because he was allowed to make preliminary plans to enter into business for himself.

> An employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed. Even before the termination of his agency, he is entitled to make arrangements to compete and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for a rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

Nilan's Alley, Inc. v. Ginsburg, 208 Ga. App. 145 (1993) (citations and punctuation omitted). Georgia law draws a clear line between an employee's mere preparation and his active pursuit of opportunities in direct competition with the current employer. The Plaintiff has presented evidence that Murphy crossed that line by "actively conceal[ing] several valuable product opportunities from Glades so he could pursue them for his new company, and even [going] so far as to use his position at Glades to sabotage a valuable generic distribution deal." (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 26.) Based on this evidence, a triable issue exists as to whether Murphy acted in direct competition with the Plaintiff's business before the end of his employment. Thus, summary judgment for the Defendants with respect to Murphy's alleged violation of his fiduciary duty is unwarranted.

    C. Conversion

The Defendants next move for summary judgment on the Plaintiff's claim that the Defendants converted proprietary material prepared by the Plaintiff, including the presentation and market and sales data contained within it.  Under Georgia law, a prima facie claim for conversion requires a showing of (1) title to the property in the plaintiff, (2) possession by the defendant, (3) demand for possession, and (4) refusal to surrender the property, or an actual conversion prior to the filing of the suit.  Habel v. Tavormina, 266 Ga. App. 613, 615 (2004).  The Court finds that the first three elements have all been met.  As to the fourth requirement, an actual conversion occurs by "[a]ny distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right."  Taylor v. Powertel, Inc., 250 Ga. App. 356, 358 (2001).  The Defendants claim that because Murphy was entrusted with a copy of the presentation, he could not be found to have wrongfully asserted control over it.  (Defs.' Mot. for Summ. J., at 21-22.)  Making an unauthorized copy does not constitute conversion because it does not deprive the Plaintiff of its property.  It may be copyright infringement but it is not conversion.  Thus, summary judgment for the Defendants is warranted.

D. Unjust Enrichment

Finally, the Defendants move for summary judgment on the Plaintiff's claim of unjust enrichment.  The Plaintiff asserts that the Defendants inequitably profited

by Murphy's misappropriation of the presentation and other data/samples he obtained through his employment with the Plaintiff and by the Plaintiff's payment of approximately $632,000.00 in salary and bonus to Murphy for five months of service in 2003. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 34.) "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Tidikis v. Network for Medical Communications & Research LLC, 274 Ga. App. 807, 811 (2005). In Felker v. Chipley, 246 Ga. App. 296 (2000), for example, two partners in a real estate venture brought an action against the managing partner for conversion of partnership money. In addition to the converted funds, the plaintiffs recovered unjust enrichment damages for the interest the managing partner had earned from his investment of the converted monies. In this case, the facts alleged by the Plaintiff show that there was an employment contract between the parties. If it was breached, the Plaintiff might be entitled to damages for breach of contract. That does not authorize the Plaintiff to seek damages for unjust enrichment. Summary judgment is appropriate on this claim.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 37] is GRANTED in part and DENIED in part.

SO ORDERED, this 16 day of December, 2005.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge